IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JANET S. HOEFS, | ) | |
| | ) | |
| Plaintiff, | ) | 04-CV-30015-KPN |
| | ) | |
| v. | ) | |
| | ) | |
| CACV OF COLORADO, LLC, | ) | |
| J.A. CAMBECE LAW OFFICE, P.C., and | ) | |
| J. ANTHONY CAMBECE, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JANET HOEFS' RESPONSE TO MOTION TO COMPEL ARBITRATION**

Plaintiff, Janet Hoefs, submits this response to defendants' motion to compel arbitration.

**INTRODUCTION**

Plaintiff filed this class action seeking redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), by defendants CACV of Colorado, LLC ("CACV"), J. A. Cambece Law Office, P.C. ("Cambece P.C.") and J. Anthony Cambece ("Cambece"). The violations are based on the sending of letters purporting to come from an attorney without any real professional involvement by an attorney and noncompliance with 15 U.S.C. §1692g.

Confronted with this violation and potential liability for many thousands of identical violations, defendants attempt to enforce an arbitration agreement that plaintiff allegedly entered into with the original creditor, MBNA. This alleged agreement is unenforceable under the circumstances of this case because (1) defendants have provided no competent evidence that the arbitration agreement attached to defendants' motion was ever agreed to by, or effective as to plaintiff, and (2)

1

the purported arbitration clause expressly addresses when it applies to debt collectors. In that regard, it provides that "debt collectors and all of their officers, directors, employees and agents" are included in the "we" and "us" that may invoke the arbitration clause "if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us." MBNA is not named as a defendant herein, and thus the clause is inapplicable.

I. **DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE THAT HOEFS WAS BOUND BY THE ARBITRATION CLAUSE PROVIDED BY DEFENDANTS, AND DEFENDANTS' AFFIANT DOES NOT HAVE PERSONAL KNOWLEDGE OF ANY RELEVANT FACTS.**

Defendants allege that an arbitration agreement was added by amendment to a credit card agreement which Hoefs had with the original creditor, MBNA. Defendants do not claim that Hoefs' original agreement with MBNA contained an arbitration agreement or that Hoefs ever signed any document providing for arbitration. Rather, defendants claim that (a) prior to July 1, 1999 Hoefs had a credit card agreement with MBNA, (b) effective July 1, 1999 that existing credit card agreement was amended to provide that "We may amend your agreement by adding, deleting, or changing provisions in compliance with the applicable notification requirements of federal law and the laws of the State of Delaware," and (c) effective January 25, 2000 an arbitration provision was added to an existing agreement between Hoefs and MBNA pursuant to that provision.

Defendants must therefore prove, by competent evidence, (1) the terms of the original credit card agreement between MBNA and Hoefs, (2) that the 1999 amendment was agreed to by Hoefs in some manner, and (3) that notice of the 2000 amendment was provided as required by the 1999 amendment. The Federal Arbitration Act merely places agreements to arbitrate on an equal footing with other contracts. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985) ("We

therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act ... does not mandate the arbitration of all claims but merely the enforcement ... of privately negotiated arbitration agreements."). If a party has, in fact, agreed to arbitrate, the agreement will be enforced. Id. The Arbitration Act does not dispense with the need to prove a legally effective assent to an agreement to arbitrate, or relieve the party claiming an arbitration agreement of the need to supply proof that one exists. Phox v. Atriums Mgmt. Co., 230 F.Supp.2d 1279, 1282-3 (D.Kan. 2002). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). "Nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." Ervin v. Nokia, Inc., 349 Ill.App.3d 508, 812 N.E.2d 534, 537 (5th Dist. 2004), citing EEOC v. Waffle House, Inc., 534 U.S. 279 (2002).

Defendants must establish the three propositions listed above by evidence satisfying summary judgment standards. A motion to compel arbitration must meet the requirements of Fed.R.Civ.P. 56 because such a motion seeks a summary determination of the existence of an agreement to arbitrate. Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002); Matterhorn, Inc. v. NCR Corp., 727 F.2d 629, 631 (7th Cir. 1984); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3rd Cir. 1980); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Institut Pasteur v. Chiron Corp., 315 F.Supp.2d 33, 37 (D.D.C. 2004); Phox v. Atriums Mgmt. Co., 230 F.Supp.2d 1279, 1282 (D.Kan. 2002); Owen v. MBPXL Corp., 173 F.Supp.2d 905, 922 (N.D.Iowa 2001). "Motions to compel arbitration are reviewed, in the first instance, under the well-settled summary judgment standard set forth in Fed. R. Civ P. 56(c)." Bellevue Drug Co. v. Advance

PCS, No. 03-4731, 2004 U.S. Dist. LEXIS 17172 (E.D. Pa., Aug. 20, 2004), at *3. Thus, "although styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." Bellevue, supra. This test is followed in the First Circuit. Snow v. BE&K Constr. Co., 126 F.Supp.2d 5, 7 (D.Me. 2001).

Defendants' original motions to compel arbitration were unsupported by affidavits or other evidence relating to any of the three propositions set forth above. Rather, defendants simply attached the claimed agreements to their motions and asserted that they were binding on plaintiff.

The claimed agreements bear no signatures. They do not have account numbers or any other indicia that they have anything to do with plaintiff. No foundation whatsoever is supplied.

A motion for summary judgment on the issue of whether an agreement exists that simply asserts that an agreement exists and offers no proof is manifestly insufficient.

Plaintiff propounded discovery to defendants concerning the existence of the purported agreement to arbitrate (Appendix A, attached). Defendant CACV answered by systematically disclaiming knowledge on the subject (Appendix B, attached):

> Interrogatory No. 1: Identify any and all persons who have personal knowledge of the mailing of the arbitration agreement.
>
> Answer: See General Objection No. 1. CACV objects to this interrogatory to the extent that it is overly broad and unduly burdensome. Without waiving its objection, CACV lacks the personal knowledge or information sufficient to respond fully to this interrogatory. CACV states that it purchased the plaintiff's account from MBNA Corporation, which mailed the subject arbitration agreement to the plaintiff in 1999.
>
> Interrogatory No. 2: Identify any and all persons who have personal knowledge of the mailing of the arbitration agreement attached as Exhibit A to plaintiff, Janet Hoefs.
>
> Answer: See General Objection No. 1. CACV objects to this interrogatory to the

4

extent that it is overly broad and burdensome. Without waiving its objection, CACV lacks the personal knowledge or information sufficient to respond fully to this interrogatory. CACV states that it purchased the plaintiff's account from MBNA Corporation, which mailed the subject arbitration agreement to the plaintiff in 1999.

The balance of the answers were the same. The only document or information supplied that could be described as evidence of any of the three propositions that defendants have to prove is an "affidavit of assignment" by a Mr. Fox (included in Appendix B) reciting that some unspecified account with a balance of unspecified amount was assigned from MBNA America Bank, N.A. to CACV as of April 3, 2002. Defendant CACV also produced a credit card account agreement (included in Appendix B) that is not the same as those attached to the original motions.

Defendants Cambece and Cambece P.C. did not respond at all. Plaintiff's motion for sanctions, seeking to strike their motions to dismiss and to compel arbitration, is pending. However, since the knowledge of CACV's attorneys Cambece and Cambece P.C. is imputed to CACV, CACV's answers can be taken as establishing that none of the defendants have any information supporting the motion to compel arbitration.

Plaintiff took the deposition of the only person identified, Fox, on Sept. 1, 2004. (Appendix C) Fox testified that he had been employed by MBNA since about July 1997 (Appendix C, p. 6) and had been manager of the charge-off sales team for one year. (Appendix C, p. 6) Fox stated that MBNA did not retain the application and could not determine if one was signed or the card was applied for by telephone. (Appendix C, p. 9) Fox did not have personal knowledge of the sending of the arbitration agreements in December 1999, but was told by the "customer fulfillment area" that it been sent to "customers in good standing." (Appendix C, pp. 12-15) Fox did not know who or how the arbitration agreements were placed in the mail stream. (Appendix C, pp. 21-22)

Fox also was not familiar with anything that was done to make sure that the agreements were in fact sent out. (Appendix C, pp. 48-49)

Defendants deposed Ms. Hoefs on the same date. (Appendix D) Ms. Hoefs applied for an MBNA credit card in the mid-1990s. She could not recall if she telephoned or filled out a written application. (Appendix D, p. 7) She did recall getting a credit card agreement with the card that resembles MBNA 14-21. (Appendix D, pp. 8-9) She did not retain the application or any of the statements. (Appendix D, p. 14) Ms. Hoefs' ex-husband had taken responsibility for the MBNA account in their 1998 divorce, and she was not aware of his using it. (Appendix D, pp. 15-16) She did not get any statements or documents from MBNA since the 1998 divorce. (Appendix D, pp. 21-23) Ms. Hoefs was certain that she had not received any amendment to a credit card agreement sent in December 1999 (Appendix D, pp. 24-25), but could not exclude the possibility that her ex-husband had gotten it. She was certain that she had not seen it until the day before the deposition. (Appendix D, pp. 53-54)

Fed.R.Civ.P. 56(e) governs the proper form of affidavits in summary judgment proceedings. The rule states:

> Supporting and opposing affidavits shall be made *on personal knowledge*, shall set forth such facts as would be admissible in evidence, and *shall show affirmatively that the affiant is competent to testify* to the matters stated therein. *Sworn or certified copies of all papers or parts thereof referred to in an affidavit* shall be attached thereto or served therewith. (Emphasis added)

Testimony, whether live or in the form of an affidavit, to the effect that a witness has reviewed a business record and that business record supports a party's position is hearsay and incompetent; rather, the records must be introduced after a proper foundation is provided. New England Savings Bank v. Bedford Realty Corp., 238 Conn. 745, 680 A.2d 301, 308-309 (1996), later

opinion, 246 Conn. 594, 717 A.2d 713 (1998). It is the business records that constitute the evidence, not the testimony of the witness referring to them. In re A.B., 308 Ill.App.3d 227, 719 N.E.2d 348 (2nd Dist. 1999); accord, Manufacturers & Traders Trust Co. v. Medina, No. 01 C 768, 2001 U.S.Dist. LEXIS 20409 (N.D.Ill. Dec. 5, 2001).

In Bedford Realty, an affiant testified that, based on her review of a file and computer records, Bedford had defaulted on a loan. 238 Conn. at 749-50. However, the records themselves were not entered into evidence. 238 Conn. at 758. The court reversed the lower court's decision admitting this affidavit, stating that the affidavit was used as actual evidence of a debt, that the affiant did not have personal knowledge, and thus, the affidavit was inadmissible hearsay.

Defendants have utterly failed to provide competent evidence of at least two of the three things that they must prove. The deposition testimony might just barely amount to a foundation for the 1997 agreement. However, there is *no* evidence that the amendment effective July 1999, allowing further amendments to be made by notice, was sent out. Without such evidence, there is no basis for making any further changes in the agreement by mere notice. Furthermore, there is no non-hearsay evidence that the amendment that took effect January 25, 2000, adding the arbitration clause, was sent out.

Thus, the motion to compel arbitration should be denied. On the contrary, summary judgment should be entered against defendants on this issue.[1]

---

[1] The Court can enter summary judgment against the movant under such circumstances. Bramble v. American Postal Workers Union, 135 F.3d 21 (1st Cir. 1998); Gibson v. Mayor, 355 F.3d 215, 222 (3d Cir. 2004).

7

## II. EVEN IF THE ARBITRATION AGREEMENT WAS VALID, IT DOES NOT APPLY.

Even if the arbitration agreement provided by defendants was valid, it does not apply to this dispute. The document containing the arbitration clause states when it applies to debt collectors. In that regard, it provides that "debt collectors and all of their officers, directors, employees and agents" are included in the "we" and "us" that may invoke the arbitration clause "if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us." MBNA is not named as a defendant herein, and thus the clause is inapplicable.

The specific treatment of "debt collectors" takes precedence and limits the circumstances under which defendants can invoke the arbitration agreement. Dannewitz v. EquiCredit, 333 Ill.App.3d 370, 371, 775 N.E.2d 189, 191 (1st Dist. 2002), is directly in point. In Dannewitz, an arbitration agreement could be invoked by "HomeGold, Inc. all of its parents, wholly owned or majority subsidiaries, affiliates, predecessors, successors, and assigns; and all of the agents, employees, directors and representatives of such entities. In addition, ... 'us' mean[s] any third party providing any product or service in connection with the Credit Transaction (including but not limited to investors or potential investors, real estate brokers, mortgage brokers, credit bureaus, appraisers, mortgage life insurance companies, private mortgage insurance companies, closing agents, escrow agents, title insurance companies, loan originators, rating agencies and loan services) or any assignee of the Credit Transaction if, and only if, such third party is named as a codefendant with us in a Claim asserted by you." EquiCredit claimed that it was an "assign" and could invoke the arbitration clause even though HomeGold was not a party to the case. The Court found that the agreement was inconsistent and contradictory, in that EquiCredit, as an assignee of the credit transaction, came

within the first sentence, but the second sentence then limited the right of an assignee to invoke arbitration. Id. at 373, 192. Under the doctrine of *contra proferentum*, the Court held the inconsistency against the drafter and denied the motion to compel arbitration. Id.

Defendants do not make any argument concerning how the "debt collector" provision of the MBNA agreement should be applied. Instead, they disingenuously quote the provision with the critical language deleted, without indicating the deletion through ellipses or other accepted methods. This type of "argument" waives any point regarding the construction of the agreement. As in Dannewitz, the inconsistency is resolved against the drafter and those claiming under it, and in favor of the more specific provision. A "debt collector" cannot invoke the arbitration clause unless MBNA is named.

It is undisputed that defendants are "debt collectors" as defined in the FDCPA. CACV acquires accounts only after they are charged-off; such a purchaser is an FDCPA "debt collector." Schlosser v. Fairbanks Capital Corp., 323 F.3d 534 (7th Cir. 2003); Pollice v. Nat'l Tax Funding, 225 F.3d 379 (3rd Cir. 2000); Ballard v. Equifax Check Services, 27 F.Supp.2d 1201 (E.D. Cal. 1998); Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala. 1987); Cirkot v. Diversified Systems, 839 F.Supp. 941 (D.Conn. 1993); Ruble v. Madison Capital, Inc., C-1-96-1693, 1998 U.S.Dist. LEXIS 4926 (N.D.Ohio 1998); Holmes v. Telecredit Service Corp., 736 F.Supp. 1289, 1292 (D.Del. 1990); Farber v. NP Funding II, LP, 96 CV 4322, 1997 WL 913335, *3, 1997 U.S.Dist. LEXIS 21245 (E.D.N.Y. Dec. 9, 1997) ("those who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection"); Stepney v. Outsourcing Solutions, Inc., 1997 U.S.Dist. LEXIS 18264 (N.D.Ill. 1997); Coppola v. Connecticut Student Loan Found., Civ. A. N-87-398(JAC), 1989

WL 47419, 1989 U.S. Dist. LEXIS 3415 (D.Conn. March 22, 1989); <u>Wagner v. American Nat'l Educ. Corp.</u>, Civ. No. N-81-541 (PCD), 1983 U.S.Dist. LEXIS 10287 (D.Conn. Dec. 30, 1983) ("The statute permits service debt collection free of the act if, when the debt was acquired, it was not in default"); <u>Commercial Service of Perry v. Fitzgerald</u>, 856 P.2d 58, 62 (Colo.App. 1993) ("[A] company which takes an assignment of a debt in default, and is a business the principal purpose of which is to collect debts, may be subject to the Act, even if the assignment is permanent and without any further rights in the assignor"). As long as the purchaser asserts that the debt was in default when acquired, the FDCPA applies, even if the assertion proves to be false. <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534 (7th Cir. 2003)

"The legislative history of section 1692a(6) [which defines 'debt collector'] indicates conclusively that a debt collector does not include . . . an assignee of a debt, as long as the debt was not in default at the time it was assigned." <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985), citing S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 USCCAN 1695, 1698. Conversely, the assignee of a debt which <u>is</u> in default at the time of the assignment is a "debt collector," if the assignee's principal purpose is the collection of debts, or the assignee regularly engages in the collection of debts. "For instance, a mortgage servicing company is not considered a debt collector when it acquires loans originated by others and not in default at the time acquired. However, to the extent the mortgage servicing company receives delinquent accounts for collection it is a debt collector with respect to those accounts." <u>Games v. Cavazos</u>, 737 F.Supp. 1368, 1384 (D.Del. 1990).

The other two defendants are a collection lawyer and his professional corporation, who regularly collect consumer debts. Both are FDCPA "debt collectors." <u>Heintz v. Jenkins</u>, 514

U.S. 291 (1995).

## CONCLUSION

For the reasons stated above, defendants' motion to compel arbitration should be denied.

Respectfully submitted,

*Christopher Lefebvre* (HAP).
Christopher M. Lefebvre
CLAUDE LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

Daniel A. Edelman
Heather Piccirilli
EDELMAN, COMBS,
    LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

*Attorneys for Janet Hoefs*

I:\case\cacv-hoefs10.157\pleading\resp.arbitration.wpd

11

## CERTIFICATE OF SERVICE

   I, Heather Piccirilli, hereby certify that on September 30, 2004, I caused a copy of the foregoing document to be served by United States Mail and Facsimile upon the parties listed below.

Kathryn E. Pieczarka
Evan T. Lawson
**Lawson & Weitzen, LLP**
88 Black Falcon Avenue
Suite 345
Boston, MA 02210
617-439-3987 (Facsimile)

David Crossley
**Law Office of David C. Crossley, P.C.**
WEA #47
1 Dubeau Circle
Campton, NH 03223
603-726-8111 (Facsimile)

Mary Morrissey Sullivan
Rick Nahigian
**Peabody & Arnold, LLP**
30 Rowes Wharf
Boston, MA 02110
617-235-3564 (Facsimile)

/s/ Heather Piccirilli
Heather Piccirilli