UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JANET S. HOEFS,                         )
        Plaintiff          )
                                        )
                                        )
    v.                                 )   Civil Action No. 04-30015-MAP
                                        )
                                        )
CACV OF COLORADO, LLC;                  )
J.A. CAMBECE LAW OFFICE, P.C.;          )
and J. ANTHONY CAMBECE,                 )
        Defendants         )

REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS'
MOTIONS TO COMPEL ARBITRATION (Document Nos. 27 and 31)
February 25, 2005

NEIMAN, U.S.M.J.

Janet S. Hoefs ("Plaintiff") seeks redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and Mass. Gen. L. ch. 93A by CACV of Colorado, LLC ("CACV"), J.A. Cambece Law Office, P.C. ("Law Office") and J. Anthony Cambece ("Cambece") (collectively "Defendants"). Plaintiff claims that Defendants' attempts to collect on a credit card debt she owed violated these statutes. Currently at issue are Defendants' motions to compel arbitration which have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons indicated below, the court will recommend that Defendants' motions be allowed.[1]

---

[1] In a separate order this day, the court has allowed Plaintiff's motion for leave to file a second amended complaint (Document No. 43). In essence, the amendment adds another plaintiff and yet another defendant. As for another motion referred to this court, Plaintiff's motion for class certification (Document No. 21), the court has granted

I. BACKGROUND

For purposes of the present motions, there appears to be no dispute as to the following facts. On October 22, 1997, Plaintiff, then named Janet King, opened a credit card account with MBNA America Bank, N.A. ("MBNA"). At her deposition, Plaintiff recalled receiving the initial Cardmember Agreement, which included, among other things, a clause allowing MBNA to amend the agreement at any time. In particular, the Cardmember Agreement stated that MBNA may amend the agreement "by complying with the applicable notification requirements of federal law and the laws of the State of Delaware."

Plaintiff lived in West Virginia when she opened her account and subsequently added her then-husband, Clinton King, as an authorized user of the credit card. MBNA sent statements and other information either to a post office box in Bancroft, West Virginia, which Plaintiff shared with Mr. King, or to her actual residence at 20 Thorn Hill Estates in Poca, West Virginia. At some point, Plaintiff divorced Mr. King and married Stephen Hoefs. Mr. Hoefs was added as an authorized user of the credit card in 1999.

In December of 1999, MBNA mailed an amendment to the agreement adding, among other things, the arbitration clause at issue. This "arbitration amendment" was included in the monthly billing statements of all credit card holders in good standing, including Plaintiff. Plaintiff, however, does not recall receiving the amendment.

---

the parties' joint request to allow further briefing, if necessary, once the instant motions to compel arbitration are resolved.

Moreover, Plaintiff does not know if her monthly statements at that time were being sent to either of her addresses in West Virginia or to her new address in Wilbraham, Massachusetts.  This issue is discussed more fully below.

In any event, the arbitration amendment, reproduced in the court's discussion below, had a provision which allowed card holders to opt-out of mandatory arbitration within thirty days of receiving the amendment.  Plaintiff did not opt out during her thirty-day window which closed on January 25, 2000.

In 2000 and early 2001, Plaintiff made several payments toward her debt.  In April of 2002, however, MBNA assigned the account, which was by then overdue, to CACV for collection.  This suit, filed in January of 2004, targets attempts by CACV and/or its parent company, Collect America, Ltd., now a defendant by virtue of the Second Amended Complaint filed this day (see n.1, supra), to collect the outstanding debt through Cambece and the Law Office.

Defendants filed their motions to compel arbitration in May of 2004.  Following an agreed-upon period of discovery, Plaintiff tendered her opposition, Defendants filed reply briefs, and the court heard oral argument.

## II.  DISCUSSION

There are two main issues with respect to Defendants' motions to compel: (1) whether Plaintiff received the arbitration amendment and, if so, (2) whether it applies. In the end, the court concludes that Defendants have the stronger argument on each issue and, thus, will recommend that their motions to compel arbitration be allowed.

A.  Receipt

A district court must promptly compel arbitration under the Federal Arbitration Act ("FAA") once it is satisfied that the parties agreed to arbitrate. *See* 9 U.S.C. § 4. If the court determines that the very existence of the arbitration agreement is seriously disputed, however, "the court shall proceed summarily to the trial thereof." *Id.* "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citation omitted). The initial question here, then, is whether Plaintiff has presented a triable issue of fact concerning the existence of the arbitration amendment. The court believes she has not.

Plaintiff does not dispute that the arbitration amendment existed. Rather, she contends that there is no evidence that she ever received it. As Plaintiff must concede, however, the applicable standard concerning receipt -- the so-called "mailbox rule" -- frames the issue quite differently. As Defendants point out, the "mailbox rule" is "a settled feature of the federal common law" and "provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supplement Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (citing, *inter alia*, *Hagner v. United States*, 285 U.S. 427, 430, (1932)). *See also University Emergency Med. Found. v. Rapier Invs., Ltd.*, 197 F.3d 18, 21 (1st Cir. 1999) (where parties agree to permit notice by mail, "notice becomes effective upon mailing pursuant to the time-honored 'mailbox rule'"). Put differently, a document mailed with a return address and never returned "gives rise to a rebuttable presumption . . . that [it] was received." *Narragansett Indian*

4

Case 3:04-cv-30015-NG   Document 59   Filed 02/25/2005   Page 5 of 12

*Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 168 (1st Cir. 2003). *See also Arkansas Motor Coaches, Ltd. v. Comm'r*, 198 F.2d 189, 191 (8th Cir. 1952) (the presumption of receipt is "very strong" and "can only be rebutted by specific facts") (citations omitted).

      In the court's estimation, the mailbox presumption applies here and has not been adequately rebutted. For one thing, Stephen Fox of MBNA confirmed the following at his deposition: that it was MBNA's "normal course of business" in December of 1999 to send the arbitration amendment to all card holders whose accounts were in good standing; that Plaintiff was in good standing at that time; that the arbitration amendment was, in fact, mailed to Plaintiff's address in Poca, West Virginia; and that MBNA never received any returned mail on Plaintiff's account. (*See* Cambece and Law Office's Reply Brief (Document No. 55), Exhibit A at 5, 14-16, 21.) In addition, Defendants have supplied a copy of Plaintiff's December 1999 billing statement which, in fact, indicates that the statement was mailed to her Poca address. (See CACV's Reply Brief (Document No. 54), Exhibit F.)[2] For her part, Plaintiff agreed at her deposition that she received mail at the Poca address and, although she generally denies receiving the

---

  [2] Fox also testified as follows:

> Q. So this amendment was set to Mrs. Hoefs?
>
> A. That's correct.
>
> Q. And you testified that these amendments are sent along with her statement; is that right?
>
> A. Yes.

(*Id.* at 14.)

5

amendment, agreed that it would be "fair to say" that the December 1999 statement was mailed to her there.

True, Plaintiff hypothesizes that the arbitration amendment may have been mailed to the post office box that she shared with Mr. King, her ex-husband, in Bancroft, West Virginia, and that he may have thrown the amendment away instead of forwarding it to her in Massachusetts. Even were that the case, however, Plaintiff does not dispute that it was *her* post office box, that Mr. King was an authorized user of the credit card, and that he also had authority to access the post office box.

It is also significant that Plaintiff continued to make payments on the account during 2000 and the beginning of calendar year 2001, well after the critical period at issue. *See Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1337-38 (M.D. Ala. 2003) (holding that plaintiff assented to arbitration provision which he claimed to not know existed because, among other things, he "continued to use the account by maintaining an account balance"). There is also no question that Plaintiff agreed, via the original Cardmember Agreement, that MBNA had the unilateral right to amend the agreement simply "by complying with the applicable notification requirements of federal law and the laws of the State of Delaware."[3] At bottom, in the court's opinion, it can be readily presumed, without adequate rebuttal, that Plaintiff received the arbitration amendment at issue.

B. Applicability

---

[3] Plaintiff makes no argument that the "opt out" notification procedure MBNA followed did not comply with federal or Delaware law.

According to the FAA, "[a] written provision in any . . . contract evidencing a transaction involving . . . an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist as law or in equity for the revocation of the contract." 9 U.S.C. § 2. In this way, the FAA ensures that arbitration agreements are enforced pursuant to their terms. *See Volt Info. Science, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Granted, credit card arbitration agreements are sometimes challenged on unconscionability or other equitable grounds. *See, e.g.,* Johanna Harrington, *To Litigate or Arbitrate? No Matter -- the Credit Card Industry's Deciding for You*, Comment, 2001 J. Disp. Resol. 101 (2001). Here, however, Plaintiff only argues that the language of the arbitration amendment does not apply to her situation. Unfortunately for her cause, the court disagrees.

In pertinent part, the arbitration amendment provides, as follows:

> Arbitration: Any claim or dispute ("Claim") by either you or us against the other, or against employees, agents, or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account . . . including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.
>
> . . . .
>
> For the purposes of this agreement, "we" and "us" means MBNA America Bank, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers,

>directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, and agents) if, and only if, such a third party is named by you as a co-defendant in any claim against us.

(CACV's Motion to Compel Arbitration (Document No. 27), Exhibit A.)  In the court's opinion, the plain language of this provision mandates arbitration of the present dispute.

The first paragraph of the amendment is clear, at least as to CACV.  "Any claim or dispute ('Claim') by either *you* or *us* against the other, or against employees, agents, or *assigns* of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account . . . shall be resolved by binding arbitration."  (*Id.* (emphasis added).)  For present purposes, there can be no dispute that "you" means Plaintiff while "us" means both MBNA (see the second paragraph's first sentence) as well as CACV as an "assign."  Thus, insofar as Plaintiff raises claims against CACV, those claims must, under the first paragraph, "be resolved by binding arbitration."

The second paragraph's first sentence also confirms that Plaintiff's claims against CACV -- as well as her claims against Cambece and the Law Office -- fall within the first paragraph's mandatory arbitration provision.  Thus, "we" and "us," as used in the first sentence, not only means MBNA and CACV (MBNA's "assign"), but all of CACV's "agents," to wit, Cambece and the Law Office.  Indeed, Plaintiff alleges in her

complaint that Cambece and the Law Office were both agents, *i.e.*, ones CACV "hired . . . to collect [the debt]." (Complaint ¶ 10.)[4]

To be sure, Plaintiff argues that the second paragraph's *second* sentence removes her claims from the first paragraph's mandatory arbitration requirement. Plaintiff reasons as follows: the second sentence of the second paragraph provides that "third parties" such as "debt collectors" are bound by the arbitration clause "if, and only if" they are "named by [Plaintiff] as a co-defendant in any claim against us"; "us" in this instance refers *only* to MBNA; Defendants, while "debt collectors," are not "co-defendant[s]" in any claim against MBNA; ergo, Plaintiff's claims against Defendants are not subject to the arbitration clause. In support, Plaintiff cites *Dannewitz v. Equicredit Corp. of Am.*, 775 N.E.2d 189, 191 (Ill. App. Ct. 2002), which excluded an assign from binding arbitration pursuant to similar contract language.

The court finds Plaintiff's argument unpersuasive for several reasons. For one thing, Plaintiff ignores both the first paragraph and the first sentence of the second paragraph. As described, these two provisions -- standing alone -- subject Plaintiff's claims against all three defendants to mandatory arbitration. For another, as reflected in the second paragraph's second sentence, CACV, as MBNA's assign, is not a "third party" providing "services" in connection with the account. Rather, CACV has become the *de facto* owner of the account, which Plaintiff herself acknowledges in her complaint. (See Complaint ¶ 10 (CACV "owned the debt"); Second Amended

---

[4] This allegation has not been changed in Plaintiff's second amended complaint. (See Second Amended Complaint ¶ 18.)

Complaint ¶ 18 (same).)

In these critical ways, therefore, *Dannewitz* is distinguishable. There, the court found a contradiction between an earlier contract provision -- which, like the one here, subjected assigns to arbitration -- and a second provision which Plaintiff alleges is identical to the second paragraph's second sentence here. The second provision in *Dannewitz*, however, was not identical; it provided as follows:

> In addition . . . "us" mean[s] any third party providing any product or service in connection with the Credit Transaction (including but not limited to investors or potential investors, real estate brokers, mortgage brokers, credit bureaus, appraisers, mortgage life insurance companies, private mortgage insurance companies, closing agents, escrow agents, title insurance companies, loan originators, rating agencies and loan services) *or any assignee of the Credit Transaction* if, and only if, such third party is named as a codefendant in a Claim asserted by you.

*Id.*, 775 N.E.2d at 191 (emphasis added). In light of this provision, the *Dannewitz* court refused to enforce the arbitration provision as to an assign which was not a co-defendant of the original owner because it found an internal contradiction: assigns were bound to arbitration in the first provision, but excluded by the italicized language in the second provision unless they were co-defendants with the original owner. *Id.* at 192-93.

Here, in contrast, assigns are not mentioned in the arbitration agreement's second provision. Unlike *Dannewitz*, therefore, there is no internal contradiction in the language of the arbitration agreement and, accordingly, no reason to interpret the contract in Plaintiff's favor. To repeat, CACV is the *de facto* owner of the account and

thus not implicated in the second paragraph's second sentence. Moreover, Cambece and the Law Office are either covered by the earlier sentences (as CACV's "agents") or they are "third party . . . debt collectors" named as "co-defendant[s]" of CACV. Under either scenario, the claims against Cambece and the Law Office, just like the claims against CACV, are, in this court's estimation, subject to mandatory arbitration.

### III. CONCLUSION

For the reasons stated, the court recommends that Defendants' motions to compel arbitration be ALLOWED and that Plaintiff's case against Defendant be DISMISSED. *See Bercovitch v. Baldwin Sch.,* 133 F.3d 141, 156 n.21 (1st Cir. 1998) (court may dismiss proceeding "when all the issues before the court are arbitrable").[5]

DATED: February 25, 2005

       /s/ Kenneth P. Neiman
      KENNETH P. NEIMAN

---

[5] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

U.S. Magistrate Judge